

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-22-00039-CR

_____

AARON ROJAS JR., Appellant

V.

THE STATE OF TEXAS

---

On Appeal from the 297th District Court
Tarrant County, Texas
Trial Court No. 1552246D

---

Before Sudderth, C.J.; Kerr and Walker, JJ.
Memorandum Opinion by Justice Kerr

## MEMORANDUM OPINION

Aaron Rojas Jr. appeals from his convictions for continuous sexual abuse of a young child, aggravated sexual assault of a child, prohibited sexual conduct, and two counts of sexual assault of a child. A jury convicted Rojas and assessed his punishment, and the trial court sentenced him according to the jury's verdicts. Rojas appeals from his convictions and raises five points: (1) the trial court erred by giving an oral jury instruction "that conveyed the [trial] court's opinion and directed the jury toward a finding of guilt"; (2) the trial court abused its discretion by admitting the forensic interviewer's expert opinions regarding the truth and veracity of this case's victim and an extraneous-offense victim; (3) the trial court abused its discretion by admitting hearsay from the forensic interviews of those victims; (4) the trial court abused its discretion by admitting extraneous-offense evidence in violation of Texas Rule of Evidence 403; and (5) the trial court abused its discretion by admitting "jail phone calls containing hearsay without a proper business-records exception." We will affirm.

# I. Background

In 2007, when A.S. (Anne)[1] was eight years old, she and her mother began living with Rojas. Rojas was Anne's mother's boyfriend and was a father figure to Anne. She considered Rojas to be her stepfather and called him "Dad."

One morning soon after Anne and her mother had moved in, Rojas woke up Anne by touching her over her clothes. Rojas then pulled down Anne's pajama pants and underwear, got on top of her, and rubbed his penis on her vagina until he ejaculated. Rojas committed this and similar acts about 40 times over the next year or two. Sometimes he touched Anne's vagina with his hand, and on one occasion, he had Anne touch his penis with her hand.

In late 2008 or early 2009, one of Rojas's biological daughters, C.R. (Claire), who was then 16 years old, moved in with Rojas, Anne's mother, and Anne. Claire accused Rojas of sexually assaulting her in spring 2009. Soon after the alleged assault, Claire was interviewed by Lindsey Dula, a forensic interviewer with Alliance for Children.

Claire's accusation led CPS to remove then-nine-year-old Anne from the home and to interview her. Anne denied any abuse. CPS made a finding of "unable to determine," and Anne was returned to the home.[2]

---

[1]We use aliases to protect the identities of those involved in this case who were minors at the time the offenses were committed. *See* Tex. R. App. P. 9.8 cmt., 9.10(a)(3).

For a time, Rojas stopped sexually abusing Anne. When the abuse resumed, its frequency increased, and in addition to Rojas's rubbing his penis on Anne's vagina, Rojas would perform oral sex on her. Around this time, Anne began physically resisting Rojas's advances, leading him to start sexually abusing Anne at knifepoint.

Anne quickly stopped fighting back, and Rojas eventually stopped threatening her with a knife. But the sexual abuse continued. Rojas began putting his penis in Anne's mouth. And starting when Anne was a freshman in high school, Rojas forced Anne to have sexual intercourse with him nearly every day.

Around this time, Anne started feeling like she was in a romantic relationship with Rojas. They used endearments with each other, and she would send him nude photographs of herself, loving text messages, and greeting cards. At the same time, however, Anne's journal entries were filled with fear, depression, and suicidal thoughts. At least one entry directly mentioned Rojas's abuse:

> I want to live with my sisters but I can't. I know I can't because they will call the cops, and I'll be right back here and have a worse life. . . . I feel like his fucking sex toy that all he wants from me since I was eight. I wish he would have killed me when I was 12 when he used to bring knives into my room. He should have killed me. He should have stopped when I told him to.

On June 25, 2018, Rojas had sexual intercourse with then-18-year-old Anne. Later that day, Anne met with two of her friends and told them that Rojas had

---

[2]The Arlington Police Department investigated Claire's accusations in 2009. The case was eventually "rendered inactive" or "pended," and Rojas was not arrested or prosecuted.

sexually abused her for years. Anne then immediately told her two sisters about the abuse, and one of them called the police. That same day, Anne went to the Grand Prairie Police Department where she was interviewed by then-Detective Greg Parker.[3] Late that night, Anne went to a hospital where a sexual-assault nurse examiner (SANE) examined her.

Rojas was arrested. After his arrest, Anne and her sisters returned to Rojas's home and retrieved her journals from their hiding place. One of Anne's sisters told Detective Parker about the journals, and he photocopied the journals' pages.

Rojas was concerned about Anne's journals. While he was in the Grand Prairie jail awaiting trial, he spoke with family members (not Anne or Claire) using the jail's telephone system, which recorded all inmate telephone calls. During one of these calls, Rojas asked his daughter whether Anne had taken "those little booklets that she would use to write stuff." He admitted that Anne's journals contained "evidence" about him because Anne would "write everything down" and that the journals would "say . . . that [he] did those things." Rojas also admitted to his daughter that he and Anne had been "having relations" but claimed that it was at Anne's insistence.

During Detective Parker's investigation, he learned about Claire's 2009 accusations against Rojas and that the Arlington Police Department had not

---

[3]At the time of trial, Parker was a patrol sergeant with the Grand Prairie Police Department.

pursued the case. After interviewing Claire, Detective Parker filed another case against Rojas based on her allegations.

The case involving Anne as the complainant was tried to a jury in February 2022. By this time, Anne was 22 years old, and Claire was 29. Both women testified about Rojas's abuse. Additionally, the jury heard testimony from, among others, the SANE; Detective Parker, who testified about his investigation; and Dula, who testified as an expert on child-abuse dynamics. Anne's journal entries and recordings of Rojas's jail calls were admitted into evidence. Rojas's defense witnesses included his wife (from whom he had long been separated); his sister; and one of his other daughters. All three women testified that Rojas had never sexually abused them, that their children had never claimed to have been abused by him, and that they had no concerns about his being around their children.

The jury was charged on

- continuous sexual abuse of a young child (paragraph 1);

- lesser-included offenses of the continuous-sexual-abuse offense alleged in paragraph 1: aggravated sexual assault of a child (paragraphs 2 and 3) and indecency with a child (paragraph 4);

- aggravated sexual assault of a child (paragraph 6);[4]

- sexual assault of a child (paragraphs 7 & 8); and

- prohibited sexual contact (paragraph 9).

---

[4]The charge contained no paragraph 5.

The jury found Rojas guilty of continuous sexual abuse of a young child (paragraph 1); aggravated sexual assault of a child (paragraph 6); sexual assault of a child (paragraphs 7 & 8); and prohibited sexual contact (paragraph 9). The jury assessed Rojas's punishment at 40 years' incarceration for paragraph 1; 30 years' incarceration for paragraph 6; and 10 years' incarceration for each of paragraphs 7, 8, and 9. The trial court sentenced Rojas accordingly.

Rojas timely filed and presented a motion for new trial and then timely filed and presented an amended new-trial motion. *See* Tex. R. App. P. 21.4, 21.6. The motion was deemed denied. *See* Tex. R. App. P. 21.8(c).

## II. The Trial Court's Oral Response to a Jury Note

During the jury's guilt–innocence deliberations, the trial court orally responded to a written jury note. In Rojas's first point, he complains that the trial court's "substantive [oral] response to a jury's question during deliberations amounts to an additional or supplemental jury instruction." He complains that not only did the trial court violate the Texas Code of Criminal Procedure's prohibition against orally instructing the jury during deliberations but that the trial court improperly commented on the weight of the evidence when doing so. *See* Tex. Code Crim. Proc. Ann. arts. 36.14, 36.27, 38.05. We start by recounting the trial court's comments and their context. We will next address whether Rojas preserved his complaints for our review. Finally, we will address the merits of Rojas's complaints as necessary.

**A. The trial court's comments and their context**

While deliberating, the jury sent out a note: "If we are unable to agree on [paragraphs] 1, 2 & 3, are we able to move on to the rest ([paragraphs] 4, 6, 7, 8, 9)[?] What happens if we can(<u>not</u>) agree unanimously on [paragraphs] 1, 2 & 3?"

In open court, with the State, Rojas, and the jury present, the trial court orally responded, "I have reviewed your note and received your note. Here are your verdict forms. They will give you a progressive order of what you should do with your verdicts and the application paragraphs." The trial court then read from application paragraph 1 in the verdict forms:

> If you find -- in paragraph 1, if you find the defendant guilty of continuous sexual abuse of a young child or children, stop here and only consider application paragraphs 6, 7, 8, or 9 and do not consider application paragraphs 2, 3, or 4.

> If you find the defendant not guilty of continuous sexual abuse of a young child or children, or if you are unable to unanimously agree,[5] please proceed to application paragraphs 2, 3, 4, 6, 7, 8, and 9.

The trial court concluded by saying, "I believe the answer to your question is within the application paragraph 1 of your jury instructions."

Neither Rojas nor the State objected to the trial court's response to the jury's note.

---

[5]As the State points out, this language comported with the law in place at the time of trial, but the Texas Court of Criminal Appeals has recently held that "a jury must be required to agree on an acquittal of the greater offense before it can return a conviction on a lesser-included offense." *Sandoval v. State*, 665 S.W.3d 496, 537 (Tex. Crim. App. 2022).

## B. Error preservation

Rojas frames the first part of this point as jury-charge error, complaining about both the trial court's procedure in answering the jury's question and the substance of that answer. Article 36.14 of the Code of Criminal Procedure requires the trial court to "deliver to the jury . . . a written charge distinctly setting forth the law applicable to the case" that does "not express[ ] any opinion as to the weight of the evidence." *Id.* art. 36.14. After deliberations have begun, Article 36.27 permits the jury to communicate with the trial court in writing and requires the trial court to "answer any such communication in writing." *Id.* art. 36.27. "When the trial court responds substantively to a question the jury asks during deliberations, that communication essentially amounts to a supplemental jury instruction, and the trial court must follow the same rules for impartiality and neutrality that generally govern jury instructions." *Lucio v. State*, 353 S.W.3d 873, 875 (Tex. Crim. App. 2011). But a communication from the trial court in response to a jury question that merely refers the jury to the original charge is not considered a supplemental instruction subject to the dictates applicable to a jury charge. *Earnhart v. State*, 582 S.W.2d 444, 449–50 (Tex. Crim. App. [Panel Op.] 1979); *Daugherty v. State*, No. 02-13-00312-CR, 2014 WL 1087931, at *3 (Tex. App.—Fort Worth Mar. 20, 2014, pet. ref'd) (per curiam) (mem. op., not designated for publication).

Rojas admits that he did not object to the trial court's "oral jury instruction" and thus concedes that he did not preserve his charge-error complaint. He

9

nevertheless argues that he was not required to do so and that the trial court's comments should result in reversal under *Almanza* because the trial court's error resulted in egregious harm. *See Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g) (establishing standard of review for jury-charge error and holding that unobjected-to jury instruction should be reviewed for egregious harm). Alternatively, he argues that he preserved error by raising his charge-error complaint in his new-trial motion. We reject these arguments for several reasons.

*First*, although Article 36.27's procedures are mandatory, "it is incumbent upon a defendant to bring the easily correctable error to the judge's attention by objection or formal bill of exception or the acts of the trial court are presumed consistent with the statute." *Smith v. State*, 513 S.W.2d 823, 829 (Tex. Crim. App. 1974). A defendant must timely object to preserve a complaint that a trial court's oral instructions did not comply with Article 36.27's procedures. *See Edwards v. State*, 558 S.W.2d 452, 454 (Tex. Crim. App. 1977); *Revell v. State*, 885 S.W.2d 206, 211 (Tex. App.—Dallas 1994, pet. ref'd); *cf. Word v. State*, 206 S.W.3d 646, 651–52 (Tex. Crim. App. 2006) (explaining that a defendant must preserve error by timely objecting to the trial court's failure to follow the correct statutory procedures in responding to a jury communication); *Green v. State*, 912 S.W.2d 189, 192 (Tex. Crim. App. 1995) (concluding that because defendant did not object to trial court's response to jury question, he "present[ed] nothing for review"). Not only is a defendant required to timely object to a trial

10

court's failing to follow Article 36.27's procedures to preserve a complaint for our review, but "the *Almanza* standard is inapplicable." *Green*, 912 S.W.2d at 193.

*Second*, regarding the substance of the trial court's oral instruction, the comments merely referred the jury to the already-given charge and thus "did not [themselves] constitute a 'charge' supplemental or otherwise." *Holberg v. State*, 38 S.W.3d 137, 141 (Tex. Crim. App. 2000) (citing *Earnhart*, 582 S.W.2d at 449–50); *see Earnhart*, 582 S.W.2d at 450 ("A referral to the original charge is not considered an additional instruction."). *Almanza*'s holding relating to jury-charge errors thus does not apply here. *See Holberg*, 38 S.W.3d at 141.

*Third*, Rojas's raising this argument in his new-trial motion did not preserve this complaint for our review. To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion sufficiently stating the specific grounds, if not apparent from the context, for the desired ruling. Tex. R. App. P. 33.1(a)(1); *Montelongo v. State*, 623 S.W.3d 819, 822 (Tex. Crim. App. 2021). A new-trial motion may preserve error if an appellant did not have the opportunity to object at trial. *See Lopez v. State*, 96 S.W.3d 406, 414 (Tex. App.—Austin 2002, pet. ref'd). Here, however, Rojas could have objected but did not. His new-trial motion thus did not preserve error. *See id.* (stating that "[t]he use of a motion for new trial to preserve error is . . . limited to the rare circumstances . . . when there is no opportunity to object").

We thus conclude that Rojas failed to preserve his Article 36.27-based complaints and that *Almanza* does not apply.[6] We now turn to whether Rojas preserved the second part of his first point—whether the trial court's oral comments violated Article 38.05's prohibition against improper judicial comments.

Most complaints, "whether constitutional, statutory, or otherwise, are forfeited by failure to comply with Rule 33.1(a)." *Mendez v. State*, 138 S.W.3d 334, 342 (Tex. Crim. App. 2004); *see Henderson v. United States*, 568 U.S. 266, 271, 133 S. Ct. 1121, 1126 (2013); *Henson v. State*, 407 S.W.3d 764, 767 (Tex. Crim. App. 2013). But Rule 33.1 "does not apply to rights which are waivable only or to absolute systemic requirements, the violation of which may still be raised for the first time on appeal." *State v. Dunbar*, 297 S.W.3d 777, 780 (Tex. Crim. App. 2009); *see Peyronel v. State*, 465 S.W.3d 650, 652 (Tex. Crim. App. 2015); *Grado v. State*, 445 S.W.3d 736, 738–39 (Tex. Crim. App. 2014); *Reyes v. State*, 361 S.W.3d 222, 229 (Tex. App.—Fort Worth 2012, pet. ref'd). A waivable-only right cannot be forfeited—it "cannot be surrendered by mere inaction" but is waivable only "if the waiver is affirmatively, plainly, freely, and intelligently made." *Grado*, 445 S.W.3d at 739. "[A] trial judge has an independent duty to implement [a waivable-only right] absent any request unless there is an effective express waiver." *Id.*

---

[6]Even if *Almanza* did apply here, we find no egregious harm because the trial court read the instruction contained in the jury's verdict forms.

One such waivable-only right is the right to a trial free of improper judicial comments. *Proenza v. State*, 541 S.W.3d 786, 797–801 (Tex. Crim. App. 2017). Article 38.05 forbids a trial judge from commenting on the weight of the evidence or otherwise divulging to the jury his opinion of the case:

> In ruling upon the admissibility of evidence, the judge shall not discuss or comment upon the weight of the same or its bearing in the case, but shall simply decide whether or not it is admissible; nor shall he, at any stage of the proceeding previous to the return of the verdict, make any remark calculated to convey to the jury his opinion of the case.

Tex. Code Crim. Proc. Ann. art. 38.05. Rojas contends that the trial court violated Article 38.05 by "redirect[ing] the jury back to paragraph 1" in telling the jury that the trial court "believed the answer" to the jury's question was in that paragraph, thus improperly commenting on the weight of the evidence. *See id.*

The right to trial free of improper judicial comments under Article 38.05 is a waivable-only right, so Rojas could forfeit that right only through an express waiver. *See Proenza*, 541 S.W.3d at 797–801. Because the record does not show such a wavier, Rojas did not forfeit this statutory complaint and may urge it for the first time on appeal. *See id.* at 801.

## C. Analysis

Rojas points to the last part of Article 38.05, which provides that a trial judge should not, "at any stage of the proceeding previous to the return of the verdict, make any remark calculated to convey to the jury his opinion of the case." Tex. Code Crim. Proc. Ann. art. 38.05; *see Brown v. State*, 122 S.W.3d 794, 798 & n.8 (Tex. Crim. App.

13

2003) (explaining that "a trial judge must . . . refrain from making any remark calculated to convey to the jury his opinion of the case" because jurors may give special and peculiar weight to the trial court's language and conduct). By creating "a duty on the trial court . . . to refrain *sua sponte* from a certain kind of action," *Proenza*, 541 S.W.3d at 798, Article 38.05 provides the defendant with "the right to be tried in a proceeding devoid of improper judicial commentary," *id.* at 801.

A "trial court improperly comments on the weight of the evidence if it makes a statement that implies approval of the State's argument, indicates disbelief in the defense's position, or diminishes the credibility of the defense's approach to the case." *Simon v. State*, 203 S.W.3d 581, 590 (Tex. App.—Houston [14th Dist.] 2006, no pet.). But not "every unscripted judicial comment in fact disrupts the proper functioning of the judicial system." *Proenza*, 541 S.W.3d at 800. If an appellant challenges a trial court's comment that is "errorless or insignificant in the context of a particular trial," then that challenge can be "denied on its merits or else declared harmless." *Id.*

Rojas complains that the trial court's comments directing the jury to paragraph 1 "left the impression the [trial] court wanted them to reach a unanimous finding of guilt" on paragraph 1 (the continuous-sexual-abuse charge) instead of considering the lesser-included offenses charged in paragraphs 2, 3, and 4. Rojas argues that by making these comments, the trial court "specifically directed the jury to the most crucial issue in the case" and "signaled the court's approval of the [S]tate's argument and diminished that of the defense." We disagree.

14

The trial court pointed the jury to the verdict forms, read a paragraph from application paragraph 1 in the verdict forms, and then referred back to that paragraph. In doing so, the trial court did not imply approval of the State's argument, indicate disbelief in Rojas's position, or diminish the credibility of Rojas's approach to the case. It merely pointed the jury to the instruction in the verdict form relevant to its questions and read it to the jury. We thus hold that the trial court's comments were errorless under Article 38.05. *See id.* But even if it was error, it was insignificant when considered in the context of the entire trial because, again, the trial court merely read the relevant jury instruction from the verdict form. *See id.* Accordingly, we overrule Rojas's first point.

### III. Rojas's Evidentiary Complaints

Rojas's remaining points challenge the trial court's evidentiary rulings regarding the admission of Dula's expert testimony (second and third points), extraneous-offense evidence (fourth point), and recordings of Rojas's jailhouse telephone calls (fifth point). We review a trial court's evidentiary rulings for an abuse of discretion. *Johnson v. State*, 490 S.W.3d 895, 908 (Tex. Crim. App. 2016). We will not reverse an evidentiary ruling unless it is outside the zone of reasonable disagreement. *Tillman v. State*, 354 S.W.3d 425, 435 (Tex. Crim. App. 2011). If the ruling is correct under any applicable theory of law, we will affirm it regardless of the trial court's reason for the ruling. *See Johnson*, 490 S.W.3d at 908.

We address Rojas's fourth point first because doing so aids in our disposition of the appeal. We will then address his second and third points together and will conclude by addressing his fifth point.

## A. The Extraneous-Offense Evidence

Rojas's fourth point challenges the trial court's admission of extraneous-offense evidence under Code of Criminal Procedure Article 38.37 regarding his sexually abusing Claire. Rojas argues that the trial court abused its direction by overruling his Rule 403 objection to Claire's testimony and by allowing her to testify because the danger of unfair prejudice substantially outweighed that evidence's probative value.

### 1. *Applicable law*

Rule 404(b)(1) disallows evidence of crimes, wrongs, or other acts solely to prove a person's character to show that the person acted in conformity with that character on a particular occasion.[7] Tex. R. Evid. 404(b)(1). Such extraneous-offense evidence is statutorily admissible, however, in certain types of child-sex-abuse cases, including continuous-sexual-abuse cases. *See* Tex. Code Crim. Proc. Ann. art. 38.37, § 2. In such cases, "[n]otwithstanding Rules 404 and 405," evidence that a defendant has committed a *separate* such sexual offense against a child may be admitted "for any

---

[7]But this evidence may be admissible for other purposes, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Tex. R. Evid. 404(b)(2).

bearing the evidence has on relevant matters, including the character of the defendant and acts performed in conformity with the character of the defendant." *Id.* § 2(b).

But even if extraneous-offense evidence is relevant and admissible under Article 38.37, that evidence can nevertheless be excluded under Rule 403 if the danger of unfair prejudice substantially outweighs the evidence's probative value. *See Wells v. State*, 558 S.W.3d 661, 669 (Tex. App.—Fort Worth 2017, pet. ref'd); *Martin v. State*, 176 S.W.3d 887, 895 (Tex. App.—Fort Worth 2005, no pet.); *see also* Tex. R. Evid. 403. Recognizing that trial courts are best positioned to gauge the impact of the evidence, we measure the trial court's ruling against the Rule 403 balancing criteria: (1) the inherent probative force of the evidence along with (2) the State's need for the evidence against (3) any tendency of the evidence to suggest a decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted. *See Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App 2006).

### 2. *Analysis*

When the State offered Claire's testimony at trial, Rojas argued that the trial court was required to hold a hearing to determine whether that evidence satisfied Article 38.37's requirements. *See* Tex. Code Crim. Proc. Ann. art. 38.37. The State

17

read to the trial court its extraneous-offense notice regarding Rojas's prior actions toward Claire, including his grooming her, masturbating in front her, touching her inappropriately, and sexually assaulting her in 2009. Rojas objected that this testimony was more prejudicial than probative, and the trial court overruled that objection.[8]

Claire, who was raised by her mother and stepfather, went on to testify that she did not meet Rojas until she was ten years old. When she was about 12 years old, Rojas began spending time with her regularly, and he would take her to a lake, where they would sit alone in his truck. On five or six occasions, while they were sitting there, Rojas used the reflective side of a compact disc to look up Claire's skirt and masturbate. Rojas twice tried to touch Claire's thigh and breasts, but she told him to stop. He apologized but continued masturbating.

At Claire's insistence, Rojas stopped taking her to the lake. He apologized for his behavior and promised that he would never do it again. At some point, Claire wrote a letter to her mother and stepfather telling them about Rojas's behavior. They

---

[8]Rojas complains that the trial court "made no meaningful [Rule] 403 weighing of the evidence as required by the law." A trial court must conduct a balancing test upon a Rule 403 objection. *Santellan v. State*, 939 S.W.2d 155, 173 (Tex. Crim. App. 1997) But a trial court is not required to perform the balancing test on the record, and when the record is silent, we presume that the trial court performed the appropriate balancing test before admitting the evidence. *James v. State*, 623 S.W.3d 533, 551 (Tex. App.—Fort Worth 2021, no pet.) (citing *Williams v. State*, 958 S.W.2d 186, 195–96 (Tex. Crim. App. 1997); *Jackson v. State*, 424 S.W.3d 140, 155 (Tex. App.—Texarkana 2014, pet. ref'd)).

questioned her in Rojas's presence. She denied that Rojas had done anything to her. Rojas stopped behaving inappropriately.

When Claire was about 15 or 16 years old, she dropped out of school and moved in with Rojas, Anne, and Anne's mother. Claire became pregnant in January 2009.[9] In April 2009, then-16-year-old Claire was showering and looked up to see Rojas peering over the shower curtain at her.[10] After she toweled off and dressed, Rojas pushed her onto a bed, removed her pants, unzipped his pants, and raped her. Afterwards, Claire dressed and ran to her mother's house. She did not immediately tell her mother what had happened because she was ashamed. But when Claire learned that she had a sexually transmitted disease, she was forced to reveal what had happened, and she and her mother called the police.

"Rule 403 favors the admission of relevant evidence and carries a presumption that relevant evidence will be more probative than prejudicial." *Shuffield v. State*, 189 S.W.3d 782, 787 (Tex. Crim. App. 2006). It is Rojas's burden to overcome this presumption and to demonstrate that the probative value of the evidence is substantially outweighed by the danger of unfair prejudice or of misleading the jury. *See Wells*, 558 S.W.3d at 669. We conclude that Rojas failed to overcome this presumption.

---

[9]Claire's child was born in July 2009. On cross-examination, Rojas's attorney clarified with Claire that Rojas is not the child's father.

[10]This wasn't the first time Rojas had spied on Claire in the shower.

First and foremost, Anne's credibility was vital to the State's case. Rojas had continually abused her for years, but she had delayed making an outcry. Rojas attacked Anne's failing to report the abuse earlier, the veracity of her journal entries, and her failing to defend herself—at the age of 12—by taking the knife from Rojas while he was sexually abusing her at knifepoint. His wife, sister, and one of his daughters testified that Rojas had never sexually abused them or their children. And although the remoteness of the extraneous-offense evidence significantly lessened its probative value, *see Newton v. State*, 301 S.W.3d 315, 320 (Tex. App.—Waco 2009, pet. ref'd), factors one (the evidence's inherent probative force) and two (the State's need for the evidence) still weighed in favor of admission, *see id.* (holding that while extraneous-offense evidence was remote, it was nevertheless probative and that the State's need for such evidence was "considerable" when there were no eyewitnesses and no physical evidence available to corroborate child-sex-abuse complainant's testimony). And, as Rojas admits, the State's presentation of Claire's testimony was not repetitive nor did it take up an inordinate amount of time during the three-and-a-half-day, guilt–innocence portion of the trial, so factor six (the likelihood that the evidence's presentation will take an inordinate amount of time or merely repeat evidence already admitted) also weighs in favor of admission. *See Wells*, 558 S.W.3d at 669.

The remaining third, fourth, and fifth factors also do not show that the probative value of Claire's testimony about Rojas's prior sexual abuse was substantially outweighed by its prejudicial effect or by some tendency to mislead the

20

jury. Although Claire's testimony about Rojas's past sexual behavior with her was prejudicial, it was not unfairly so. Indeed, its prejudicial nature arises from the fact that it was especially probative of Rojas's propensity to prey on similarly aged female family members. *See id.* We see no indication that Claire's testimony confused or distracted the jury from the main issues in the case, suggested a decision on an improper basis, or was given undue weight because the jury was ill equipped to evaluate its probative force. *See id.*

The trial court's admission of Claire's testimony regarding Rojas's past sexual abuse was not an abuse of its discretion. We overrule Rojas's fourth point.

## B. The Forensic Interviewer's Expert Testimony

Rojas's second and third points challenge the trial court's admission of Dula's expert testimony. In his second point, Rojas argues that the trial court abused its discretion by allowing Dula—a forensic interviewer who had interviewed Claire in 2009 and had reviewed videos of Detective Parker's interviews with Claire and Anne—to give expert testimony about Anne's and Claire's truthfulness and veracity. Rojas argues in his third point that Dula's testimony about the interviews' contents was inadmissible "backdoor hearsay" and that the trial court thus abused its discretion by allowing that testimony. Because both of these points involve Dula's testimony, we will discuss them together. But we first address whether Rojas has preserved his complaints for our review.

21

**1.** *Error preservation*

The State contends that Rojas failed to preserve his truth-and-veracity-opinions complaint because his appellate complaint on this point does not comport with his trial objections. *See Lovill v. State*, 319 S.W.3d 687, 691–92 (Tex. Crim. App. 2009) ("A complaint will not be preserved if the legal basis of the complaint raised on appeal varies from the complaint made at trial."); *Pena v State*, 285 S.W.3d 459, 464 (Tex. Crim. App. 2009) ("Whether a party's particular complaint is preserved depends on whether the complaint on appeal comports with the complaint made at trial.").

Here, outside the jury's presence, the State proffered Dula as an expert on child-abuse dynamics. Rojas agreed that she was a qualified expert in this area but stated, "I will make an objection when the time comes if she offers impressions or any information gained during any of those forensic interviews." Rojas also argued that Dula's testimony regarding the interviews' contents would be backdoor hearsay and asked the trial court to limit Dula's testimony so "that impermissible hearsay cannot be brought out in front of the jury." The trial court responded,

> I -- I tend to agree with that, but I -- I'll even make this easier for you. I'll limit the scope of this witness to her opinion, but I won't let her interject facts of opinions that she didn't know that -- that she wasn't there. I'll let her have a -- she can -- *she can make an opinion as to whether an assault occurred. She can make her opinion as to truthfulness, veracity of whoever she interviewed or watched.* She can go into her training and schooling. The ultimate issue of -- of what, when, and where if she's -- didn't -- if she wasn't on-site or didn't do a forensic interview, I -- I'm probably not going to let her testify as to what happened.
>
> . . . .

Well, she's a -- she can base her opinion on whatever she based her opinion on. She watched videos or read reports. I mean, that's part of her deal, but she's not going to be able to repeat it verbatim. She can -- you can ask her what she based her opinion on and how she got her opinion. You can cross-examine her about it. And when -- she can go into outcry, if there was an outcry. I don't -- I don't know what this witness is going to say. She can go and watch -- she watched it on a videotape, but -- but that's-- she can say that's what she based her opinion on as far as, you know, factually specific. Stuff, if she's not there, she's not there. But she can still base an expert opinion on -- without being there. She can actually base an -- she can -- *she can have an expert opinion as to credibility, as to truth, veracity.* You get to cross-examine her about it. *It's not bolstering when she's an expert opinion in the field.* [Emphases added.]

To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion sufficiently stating the specific grounds, if not apparent from the context, for the desired ruling. Tex. R. App. P. 33.1(a)(1); *Montelongo*, 623 S.W.3d at 822. "The two main purposes of requiring a specific objection are to inform the trial judge of the basis of the objection so that he has an opportunity to rule on it and to allow opposing counsel to remedy the error." *Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012); *Resendez v. State*, 306 S.W.3d 308, 312 (Tex. Crim. App. 2009). Although an objection must be specific, preservation does not require "magic language" but turns only on whether the trial court understood the basis of the objection. *Vasquez v. State*, 483 S.W.3d 550, 554 (Tex. Crim. App. 2016); *State v. Rosseau*, 396 S.W.3d 550, 555 (Tex. Crim. App. 2013). Further, the Texas Court of Criminal Appeals has cautioned intermediate appellate courts against engaging in a "hyper-technical" parsing of an objection's specificity in

23

determining preservation. *Vasquez*, 483 S.W.3d at 554; *Everitt v. State*, 407 S.W.3d 259, 263 (Tex. Crim. App. 2013).

Given these principles and the context of Rojas objection, we conclude that the parties and the trial court understood that the basis for Rojas's "impressions" objection encompassed Dula's opinions about Anne's and Claire's truth and veracity, and that the trial court overruled that objection. We thus conclude that because Rojas's appellate complaint comports with his trial-court complaint, he has preserved this complaint—as well as his backdoor-hearsay complaint—for our review. *See Clark*, 365 S.W.3d at 339; *Resendez*, 306 S.W.3d at 313; *Pena*, 285 S.W.3d at 464.

### 2. *Dula's testimony*

Dula, who was the State's final witness, is the current Director of Program Services at Alliance for Children and has testified as a child-abuse-dynamics expert many times over the past 20 years. She explained that children commonly delay disclosing abuse and commonly deny abuse when directly asked. Dula testified generally about how perpetrators engage in grooming behavior, manipulation, and blackmail. She also testified about coping mechanisms children use to deal with chronic abuse.

Dula testified that the forensic-interview process is designed to reduce the risk of suggestibility or coaching by facilitating a free narrative by the child in which the child has the ability to describe sensory and peripheral details and to correct the interviewer. Dula explained "suggestibility" as "the idea that if somebody says

something to a child that didn't take place, that children aren't strong enough or don't have the ability to say, 'No, that's not true. This is what happened.'" She further explained that "coaching" can be either "a child being told to say something that did not happen" or a perpetrator "telling a child not to say something."

Dula testified that she had conducted Claire's forensic interview in 2009 and had watched videos of Detective Parker's interviews with Anne and Claire. Although Detective Parker's version of a forensic interview with Anne was not "to the level that [Dula] and her employees would conduct it," Dula saw no "red flags or any signs of coaching" in Detective Parker's interview of Anne. According to Dula, Anne gave sensory and peripheral details and corrected Detective Parker. Dula described Anne as being "very narrative at different portions of the interview" and as being tearful and crying at other portions. Dula's only criticism of the interview was that she thought that "more information . . . could have been obtained, but it was nowhere near concerning or rising to suggestibility or coaching" on Detective Parker's part.

Dula had similar opinions about Detective Parker's interview with Claire. There were no signs of coaching by Detective Parker or of suggestibility regarding the acts of abuse Claire had reported. Like Anne, Claire had sensory and peripheral details and corrected Detective Parker.

From that interview, Dula learned that Claire had denied the abuse when she was confronted by her parents and Rojas, but the denial didn't surprise Dula because Rojas was there when Claire was questioned. Dula was also unsurprised to learn that

Claire had decided to go live with Rojas after having been sexually abused by him. Dula was similarly not surprised that Anne had denied any abuse when CPS had interviewed her at the time of its investigation into Claire's allegations.

Based on her review of both interviews, Dula concluded that there were "similarities between the sexual abuse both girls suffered" because they reported similar acts of abuse, manipulation, and grooming by Rojas. At the end of her testimony, the State asked Dula whether it was her job to "show up and testify as a lie detector." She responded, "No," and stated that her job was to assist in investigations as a "specialized resource for our investigators who make the decisions." On cross-examination, Dula confirmed that she did not know whether Anne's and Claire's allegations were true and conceded that she had "no way of knowing" whether they were true. She also testified that she could not tell the difference between a true outcry and a false outcry. On re-direct, Dula testified that her report from Claire's 2009 forensic interview showed that Dula had circled "consistent with that of abuse" in the interview-summary section of the interview form.

### 3. *Truth-and-veracity opinions*

Expert testimony does not assist the jury and is thus inadmissible if it constitutes "a direct opinion on the truthfulness" of a child complainant's allegations. *Yount v. State*, 872 S.W.2d 706, 708 (Tex. Crim. App. 1993). The State therefore may not elicit expert testimony that a particular child is telling the truth or that child complainants as a class are worthy of belief. *Id.* at 711–12. Nor may an expert offer a

26

direct opinion on the truthfulness of a child complainant's allegations. *Schutz v. State*, 957 S.W.2d 52, 59 (Tex. Crim. App. 1997).

An expert can, however, testify about coaching and manipulation in general and whether a child exhibited signs of coaching or manipulation. *See id.* at 73; *Cantu v. State*, 366 S.W.3d 771, 777 (Tex. App.—Amarillo 2012, no pet.); *see also Gonzales v. State*, Nos. 03-13-00333-CR, 03-13-00334-CR, 2015 WL 3691180, at *4 (Tex. App.—Austin June 11, 2015, no pet.) (mem. op., not designated for publication); *Johnson v. State*, No. 02-13-00482-CR, 2015 WL 1792971, at *3 (Tex. App.—Fort Worth Apr. 16, 2015, pet. ref'd) (mem. op., not designated for publication). An expert may also testify about behavioral characteristics that child-abuse victims commonly exhibit and opine whether a child's behavior is consistent with those characteristics. *See Yount*, 872 S.W.2d at 708–09; *Cohn v. State*, 849 S.W.2d 817, 818 (Tex. Crim. App. 1993); *Shaw v. State*, 329 S.W.3d 645, 651 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd).

Here, Rojas complains that Dula's opinions crossed the line into impermissible truth-and-veracity opinions and that the trial court abused its discretion by allowing Dula to testify directly and indirectly about Anne's and Claire's truthfulness. The State concedes that the trial court's ruling that Dula could testify regarding a victim's veracity or truthfulness is contrary to the law but maintains that Dula's opinions did not cross the line into improper truth-and-veracity opinions. We mostly agree with the State.

The trial court did not abuse its discretion by allowing Dula to testify regarding red flags, behavioral characteristics, manipulation, coaching, the girls' describing sensory and peripheral details, and the consistency between the girls' interviews because such opinions were not direct comments upon the truth of Anne's and Claire's allegations. *See Hernandez v. State*, Nos. 02-16-00373-CR, 02-16-00374-CR, 2018 WL 3764066, at *9 (Tex. App.—Fort Worth Aug. 9, 2018, pet. ref'd) (mem. op., not designated for publication). To the extent that the trial court abused its discretion by allowing Dula to testify that she had circled "consistent with that of abuse" on the interview form from her 2009 interview with Claire, *see Salinas v. State*, 166 S.W.3d 368, 371 (Tex. App.—Fort Worth 2005, pet. ref'd) (holding that expert's testimony diagnosing sexual abuse based solely on the complaining witness's self-reported history was an improper attempt to bolster the complaining witness's credibility and a direct comment on her truthfulness), we conclude that such error did not affect Rojas's substantial rights, *see* Tex. R. App. P. 44.2(b). That is, we are fairly assured from examining the record as a whole that the error did not influence the jury or that it had but a slight effect because the jury had already heard Claire's testimony regarding Rojas's sexually assaulting her. *See Macedo v. State*, 629 S.W.3d 237, 240 (Tex. Crim. App. 2021). We thus overrule Rojas's second point.

We next address Rojas's third point—whether the trial court abused its discretion by overruling his objections to Dula's testimony as backdoor hearsay.

### 4. *Backdoor hearsay*

Hearsay is a statement, other than one made by the declarant while testifying at a trial or hearing, offered into evidence to prove the truth of the matter asserted. Tex. R. Evid. 801(d). Hearsay is inadmissible unless made admissible by statute or rule. Tex. R. Evid. 802.

The hearsay rule may not be circumvented by inference or by eliciting the substance of the statement in indirect form. *See Schaffer v. State*, 777 S.W.2d 111, 113–14 (Tex. Crim. App. 1989). Even if the out-of-court statement itself is not introduced, the hearsay rule may apply if the testimony allows the jury to ascertain the purport of the statement; this type of evidence is known as "backdoor hearsay." *Id.* Whether testimony constitutes backdoor hearsay "turns on how strongly the content of the out-of-court statement can be inferred from the context." *Head v. State*, 4 S.W.3d 258, 261 & n.2 (Tex. Crim. App. 1999). The court must decide "whether the strength of the inference produces an 'inescapable conclusion' that the evidence is being offered to prove the substance of an out-of-court statement." *Id.* at 262 (quoting *Schaffer*, 777 S.W.2d at 114). Stated differently, backdoor hearsay exists when "'the State's *sole intent* in pursuing [a] line of questioning is to convey to the jury' the contents of the out-of-court statements." *Id.* (quoting *Schaffer*, 777 S.W.2d at 114).

Here, Dula did not reveal the substance of Anne's and Claire's interviews. Rojas identifies as backdoor hearsay Dula's testimony that Dula observed no red flags or any signs of coaching or suggestibility during the interviews, that Anne and Claire

29

gave sensory and peripheral details, that Anne's demeanor was "narrative," and that Anne was tearful and appeared to be crying in her interview. Rojas also points to Dula's testimony that the sexual abuse and grooming suffered by the girls was similar. This testimony merely characterized the victims' responses without providing the substance of those responses. The trial court thus could have reasonably concluded that Dula's testimony, "when taken in context, did not lead to any inescapable conclusions as to the substance of the out-of-court statements." *Id.*; *see Consuelo v. State*, No. 05-07-00848-CR, 2008 WL 3578594 at *6 (Tex. App.—Dallas Aug. 15, 2008, pet. ref'd) (not designated for publication) (concluding that trial court did not abuse its discretion by admitting, over the defendant's hearsay objection, a detective's testimony confirming that complainant "had given detailed responses to questions about the assault in her forensic interview").

Dula also testified that she had learned from a review of Claire's interview with Detective Parker that Claire had denied the abuse when questioned by her parents in Rojas's presence. Although this testimony revealed the contents of that interview, Claire herself had already testified that when her parents questioned her in Rojas's presence, she had denied the abuse. It thus cannot be said that the State's "sole intent" in asking Dula for her opinion on Claire's denial was to convey to the jury the contents of that out-of-court statement. *See Head*, 4 S.W.3d at 262. And because Dula's testimony was cumulative of Claire's testimony, any error in allowing Dula to give her opinion on that fact was harmless. *See Matz v. State*, 21 S.W.3d 911, 912–

30

13 (Tex. App.—Fort Worth 2000, pet. ref'd) (op. on remand). We overrule Rojas's third point.

## C. The Recordings of Rojas's Jailhouse Telephone Calls

In Rojas's fifth point, he contends that the trial court abused its discretion by admitting over his hearsay objection recordings of telephone calls that he made from the Grand Prairie Jail. Rojas complains that the testimony of the sponsoring witness (Detective Parker) was inadequate to admit the recordings under the business-records exception to the hearsay rule.

### 1. *Applicable law*

As noted, hearsay is inadmissible unless made admissible by statute or rule. Tex. R. Evid. 802. One such rule is Rule 803(6), the so-called business-records exception, which allows the admission of "[a] record of an act, event, condition, opinion, or diagnosis" if

> (A) the record was made at or near the time by—or from information transmitted by—someone with knowledge;
>
> (B) the record was kept in the course of a regularly conducted business activity;
>
> (C) making the record was a regular practice of that activity;
>
> (D) all these conditions are shown by the testimony of the custodian or another qualified witness . . . ; and
>
> (E) the opponent fails to demonstrate that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

Tex. R. Evid. 803(6).

31

The term "business" under this rule "includes every kind of regular organized activity whether conducted for profit or not." Tex. R. Evid. 803(6)(E). But "[w]hen a business receives information from a person who is outside the business and who has no business duty to report or to report accurately, those statements are not covered by the business records exception." *Garcia v. State*, 126 S.W.3d 921, 926 (Tex. Crim. App. 2004). Such statements must independently qualify for admissibility, such as an admission by a party opponent. *Id.* at 926–27; *see* Tex. R. Evid. 801(e)(2).

Either a records custodian or another qualified witness can lay the predicate for the admission of evidence under Rule 803(6). *Bahena v. State*, 634 S.W.3d 923, 929 (Tex. Crim. App. 2021). "A custodian of records can be a qualified witness. But a qualified witness need not be a custodian of records." *Id.*

### 2. *Analysis*

Here, Detective Parker with the Grand Prairie Police Department testified about the system—which is overseen by Securus Technologies, an outside company—that the Grand Prairie Police Department uses to record and screen outgoing inmate telephone calls. Detective Parker screens these calls as part of his work and investigations. It is a regular activity of the department to record these calls.

According to Detective Parker, incoming inmates are assigned a unique PIN code to use for each call. Before an inmate is allowed to make a call, he is required to read a prompt so that the system can create a voice print based on the prompt.

32

When an inmate wants to make a call, he must enter his unique PIN code before dialing the telephone number. During the call, the inmate's voice is continually checked against the voice print connected with the PIN code used. The calls are contemporaneously recorded.

When a call ends, the recording is automatically uploaded to Securus's servers, to which the Grand Prairie Police Department has access. Detective Parker can search by booking number, name, date of birth, and time period to find if calls were made and by whom. Detective Parker was thus able to locate recordings of Rojas's telephone calls. He testified that he had pulled some of those recordings from the server and put copies of them onto two discs. Those two discs were admitted into evidence and played for the jury while a translator translated the conversations from Spanish to English.

The Texas Court of Criminal Appeals recently determined that similar testimony from an officer with the Harris County Sheriff's Office satisfied Rule 803(6)'s requirements for admission of inmate calls under the business-records exception. *See id.* at 925, 928–29; *see also Bahena v. State*, 604 S.W.3d 527, 538–39, 541–43 (Tex. App.—Houston [14th Dist.] 2020) (Hassan, J., dissenting) (explaining that Harris County uses the Securus system to record and store inmate telephone calls), *aff'd*, 634 S.W.3d at 929. We thus conclude that Detective Parker's testimony satisfied Rule 803(6)'s requirements. *See Bahena*, 634 S.W.3d at 928–29.

Rojas also argues that the recordings' contents were not covered by the business-records exception because he and his family members had no business duty to Securus. *See Garcia*, 126 S.W.3d at 926. Rojas's statements in the phone calls in which he admitted to having a relationship with Anne and that Anne's journals contained evidence against him were non-hearsay statements by a party opponent and were thus admissible. *See* Tex. R. Evid. 801(e)(2)(A); *Acosta v. State*, Nos. 02-13-00470-CR, 02-13-00471-CR, 2015 WL 5893693, at *5 (Tex. App.—Fort Worth Oct. 8, 2015, no pet.) (mem. op., not designated for publication). As for Rojas's family members' statements, those statements were not hearsay because they were not admitted for the truth of the matters asserted but to place Rojas's admissible responses into context for the jury. *See* Tex. R. Evid. 801(d)(2); *Acosta*, 2015 WL 5893693, at *5.

In sum, we conclude that the trial court did not abuse its discretion by overruling Rojas's objections and admitting into evidence the recordings of his jailhouse telephone calls. We overrule Rojas's fifth point.

## IV. Conclusion

Having overruled Rojas's five points, we affirm the trial court's judgments.

/s/ Elizabeth Kerr
Elizabeth Kerr
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: June 22, 2023